## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LYNDA ARMS,

          Plaintiff,

   v.

LAPEER COUNTY MEDICAL
CARE FACILITY, GARY
EASTON, individually, TONY
ROESKE, individually,
ANGELA OSENTOSKI,
individually, and LINDA
RALSTON, individually,

          Defendants.

2:18-cv-11808
Hon. Terrence G. Berg

## ORDER GRANTING MOTION TO DISMISS

Plaintiff Lynda Arms served as the office manager and human resources officer for the Lapeer County Medical Care Facility ("LCMCF") for 28 years. LCMCF is a county-owned skilled nursing facility. Arms is now suing LCMCF and several of her co-workers for claims arising from her allegation that they falsely accused her of embezzling funds from the nursing facility. Plaintiff Arms claims that these accusations resulted in her termination and subsequent criminal prosecution by the Lapeer County Sheriff's Department

and Prosecuting Attorney. She filed suit under 42 U.S.C. § 1983 alleging violations of her rights under the Fourth and Fourteenth Amendments,[1] and First Amendment. Additionally, she asserts state law claims for malicious prosecution under Mich. Comp. Laws § 600.2907 and Michigan common law, and violation of the Elliot-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2202.

## BACKGROUND

In addition to suing her long-time employer LCMCF, Plaintiff asserts claims against the following of her former co-workers: Gary Easton (Plaintiff's manager), Tony Roeske (also Plaintiff's manager), Angela Osentoski (employee), and Linda Ralston (employee). ECF No. 5 PageID.31–32. As a human resources officer and office manager at LCMCF, Plaintiff explains she was responsible for "mak[ing] sure that all of her work was accessible to others, as a contingency plan, so that nobody was without the necessary records." *Id.* PageID.33. She does not specify what kinds

---

[1] The Court treats Plaintiff's claim for malicious prosecution in violation of the "Fourth and/or Fourteenth Amendment" as one for violation of her Fourth Amendment rights only. The Sixth Circuit has expressly stated that the right to be free from malicious prosecution "must be asserted according to the Fourth Amendment" in a § 1983 action. *Johnson v. Ward*, 43 F. App'x 779, 782 (6th Cir. 2002) (quoting *Spurlock v. Satterfield*, 167 F.3d 995, 1006 n.19 (6th Cir. 2002)).

of records she was entrusted to maintain. As part of her "contingency plan," Plaintiff avers she gave "emergency access to her files" to certain other LCMCF employees, including Joyce Leroski, and Defendants Roeske, and Ralston. *Id.* Plaintiff provides no specific facts about the nature of this arrangement, such as how she gave them access, or what kind of files—digital or paper, official or personal—they were, or to what subject matters they pertained. But Plaintiff claims that at no point did any LCMCF employee express concern about the fact that she shared such "access." *Id.*

In 2015, LCMCF's accountant (whether an outside or County-employed accountant is unknown, as the Complaint simply refers to this person as a "CPA") asked for Plaintiff's help conducting an internal audit. *See id.* In response, Plaintiff claims that she "locat[ed] and obtain[ed] documentation regarding Defendant Easton's account that had previously received approximately [a] $75,000 influx due to accounting papers he had prepared and/or filed." *Id.* It is difficult to understand precisely what Plaintiff means by this allegation because no explanation is provided as to what "documentation" Plaintiff found to show this happened, what an

"influx" is, what kind of "account" Easton had at LCMCF, how such an "influx" could be caused by "accounting papers [Easton] had prepared and/or filed", what such "accounting papers" were, why they were "prepared" or where they were to be "filed."

Nevertheless, Plaintiff contends, LCMCF's Board discussed "making" Easton, her manager, "pay back the [$60,000 in][2] monies improperly given to him" but ultimately took no action on the matter. *Id.* Plaintiff further contends that no criminal charges were filed against Defendant Easton in connection with that incident. *Id.* After Plaintiff helped LCMCF's auditor gather documentation related to Defendant Easton's account, Plaintiff alleges his behavior toward her changed, and that he became "cold towards her," and started "excluding her, not talking to her, [and] becoming upset towards her." *Id.* Further, she claims Defendant Easton began "demanding that [Plaintiff] train Defendant Osentoski to replace her." *Id.*

---

[2] Plaintiff at first alleges that Defendant Easton's account received a $75,000 influx but elsewhere in her Amended Complaint states, "[u]pon information and belief, the amount of money that Defendant Easton misallocated exceeded $60,000." ECF No.5 PageID.33. It is unclear from the pleadings exactly how much of the $75,000 influx in Defendant Easton's account was improperly allocated.

A few months later, Plaintiff alleges there was a payroll deduction error in her account that resulted in her being paid an extra $314. *Id.* PageID.34. She claims that because multiple employees had access to her files, someone else could have made the change that resulted in her receiving the additional $314. *Id.* According to the Amended Complaint, she notified Defendants of the payroll error and they agreed to remedy it by deducting $314 from her paycheck. *Id.* Plaintiff avers she indeed repaid approximately $300 to LCMCF but that Defendants nonetheless accused her of making the accounting error on purpose, framed it as embezzlement, and subsequently terminated Plaintiff's employment. *Id.* PageID.34–35. While Plaintiff describes these embezzlement allegations as "false and baseless," ECF No. 5 PageID.35, she was nonetheless later criminally charged with embezzlement—and acquitted at trial. *Id.*

The Amended Complaint alleges that the Defendants, LCMCF and its employees, "had no probable cause" to believe Plaintiff misappropriated funds but that they nevertheless "charged" her with the crime of embezzlement. *Id.* PageID.34–35.

The Lapeer County Sheriff and the Prosecuting Attorney make arrest and prosecution decisions, however, not the County's nursing facility or its employees.

Plaintiff filed this civil rights suit on June 6, 2018 and entered her Amended Complaint on June 27, 2018. ECF Nos. 1 & 5. Defendants moved to dismiss the Amended Complaint for failure to state a claim upon which relief could be granted. ECF No. 9 PageID.355. The Court agrees that Plaintiff has not pled facts that would entitle her to relief on her claims for violation of the Fourth and First Amendment, asserted under § 1983, or for state law malicious prosecution or violation of the Elliot-Larsen Civil Rights Act.

## DISCUSSION

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of a lawsuit where the defendant establishes the plaintiff's "failure to state a claim upon which relief can be granted." Consideration of a motion to dismiss under Rule 12(b)(6) is confined to the pleadings. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). Because Defendants styled their motion as one seeking

dismissal for failure to state a claim under Rule 12(b)(6), the Court declines to consider documents outside the pleadings and thereby to convert Defendants' motion to one for summary judgment. *See* ECF No. 9 (attaching multiple exhibits in support of Defendants' motion to dismiss); *see also* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). The Court does not necessarily agree with Defendants' assertion that the exhibits they attached to their motion to dismiss were incorporated by reference into the Complaint and therefore does not consider them part of the pleadings. Besides, dismissal of Plaintiff's Complaint for failure to state a claim is plainly appropriate based on the insufficiency of her factual allegations.

In evaluating a motion to dismiss under Rule 12(b)(6), courts "must construe the complaint in the light most favorable to the plaintiff, accept all well-pled factual allegations as true and determine whether the plaintiff undoubtedly can prove no set of facts consistent with their allegations that would entitle them to

relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006)). Though this standard is liberal, it requires a plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" in support of her grounds for entitlement to relief. *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Under *Ashcroft v. Iqbal*, the plaintiff must also plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. 662, 678 (2009) (citation omitted). A plaintiff falls short if she pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." *Albrecht*, 617 F.3d at 893 (quoting *Iqbal*, 556 U.S. at 678–679).

### A. Fourth Amendment Claims

Plaintiff first claims that Defendants violated her Fourth Amendment rights because their alleged misconduct in "charg[ing]" her with "the crime of 'embezzlement'" "constituted and/or

effectuated an unreasonable prosecutorial seizure." ECF No. 5 PageID.35, 37. "As a direct and proximate result of Defendants' false and fraudulent criminal charge(s)," Plaintiff contends she was "legally seized and caused and/or forced to stand trial." *Id.* PageID.35. Plaintiff's claim for malicious prosecution in violation of the Fourth Amendment, asserted through § 1983, must be dismissed for failure to state claim.

Malicious prosecution of an individual violates the Fourth Amendment, which "encompasses wrongful investigation, prosecution, conviction, and incarceration." *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (quoting *Barnes v. Wright*, 449 F.3d 709, 715–16 (6th Cir. 2006)). But to succeed on a malicious prosecution claim under § 1983 when that claim is premised on a Fourth Amendment violation, Plaintiff first must plausibly allege that the Defendants "ma[d]e, influence[d], or participate[d] in the decision to prosecute" her. *Sykes*, 625 F.3d at 308 (quoting *Fox v. DeSoto*, 489 F.3d 227, 327 (6th Cir. 2007) (additional citations omitted)). Second, because a § 1983 claim is premised on violation of a constitutional right, Plaintiff must allege facts showing that

Defendants lacked probable cause for the criminal prosecution. *Sykes*, 625 F.3d at 308 (citing *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007)) (additional citation omitted). And third, Plaintiff must plausibly claim that "as a consequence of a legal proceeding," she suffered a "deprivation of liberty" separate from the initial seizure. *Sykes*, 625 F.3d at 308–09. Finally, the alleged facts must demonstrate that the criminal proceeding was resolved in favor of the plaintiff. *Id.* at 309 (citing *Heck v. Humphrey*, 512 U.S. 477, 484 (1994)). Plaintiff has pled his fourth element but has failed to adequately plead the other required elements of a claim for malicious prosecution under § 1983 and the Fourth Amendment.

Critically, to adequately plead that the Defendants "ma[d]e, influence[d], or participate[d] in the decision to prosecute" her, *Sykes*, 625 F.3d at 308, Plaintiff must allege that Defendants participated in the decision to prosecute "in a way that aid[ed] in the decision, as opposed to passively or neutrally participating." *Miller v. Maddox*, 866 F.3d 386, 390 (6th Cir. 2017) (internal quotation marks omitted) (citations omitted). In *Miller* for example, a police officer was found to have participated or influenced the

decision to prosecute the plaintiffs when he "made misrepresentations and omissions in his application for an arrest warrant and investigative report, which were relied on by the prosecutors in proceeding against the plaintiffs." *Id.* (citing *Sykes*, 625 F.3d at 314–17). In contrast, the Sixth Circuit held that where a police officer filled out a police report and forwarded it to the prosecutor's office, he could not be held liable for malicious prosecution under the Fourth Amendment for simply providing such information. *See Skousen v. Brighton High Sch.*, 305 F.3d 520, 529 (6th Cir. 2002).

Here, fatally to Plaintiff's § 1983 claim for violation of her Fourth Amendment rights, she fails to allege facts that would permit a jury to infer Defendants made, influenced, or participated in the prosecution decision. She does not specifically allege that any of the Defendants interacted in any way with the Lapeer County Sheriff or the Prosecuting Attorney's Office, or even that they communicated with either of these offices regarding Plaintiff's alleged criminal conduct. Moreover, under *Skousen*, simply reporting potentially suspicious activity in Plaintiff's account to the

Sheriff's Office does not suffice to meet the first prong of a claim for malicious prosecution. 305 F.3d at 529. This deficiency by itself dooms Plaintiff's § 1983 claim for malicious prosecution under the Fourth Amendment. But Plaintiff has also failed to plead that there was a lack of probable cause for her criminal prosecution[3], or that she suffered a deprivation of liberty as a consequence of that prosecution other than her initial arrest. The Court concludes Plaintiff would not be entitled to relief "under any set of facts that could be provided consistent with the allegations" of her Fourth Amendment claim. *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Village Sch. Dist.*, 428 F.3d 223, 228 (6th Cir. 2005) (citation omitted). For these reasons, Plaintiff's § 1983 claim alleging violation of the Fourth Amendment must be dismissed for failure to state a claim upon which relief can be granted.

---

[3] While the Amended Complaint claims in conclusory terms that the criminal charges were "false and baseless," ECF No. 5 Page ID.35, 38, the facts pled in the Amended Complaint support, rather than deny, the account that Plaintiff received an overpayment of $314. Whether such an insignificant sum should be considered sufficient to justify bringing an embezzlement charge or not, the facts as alleged are more consistent with the existence of probable cause than contrary to it.

## B. Malicious Prosecution Under Michigan Law

Plaintiff's state-law claim for malicious prosecution falls short of the pleading standard for similar reasons. Under Michigan law, the tort of malicious prosecution includes largely the same elements as under federal law. *Zavatson v. City of Warren, Mich.*, 714 F. App'x 512, 524 (6th Cir. 2017). But there is an additional requirement under state law "that the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice." *Id.* (quoting *Matthews v. Blue Cross & Blue Shield of Mich.*, 572 N.W.2d 603, 610 (Mich. 1998)). Additionally, "the prosecutor's exercise of his or her independent discretion in initiating and maintaining a prosecution is a complete defense to an action for malicious prosecution" against private defendants under Michigan law. *Zavatson*, 714 F. App'x at 525 (quoting *Matthews*, 572 N.W.2d at 613); *see Matthews*, 572 N.W.2d at 613 ("As the chief law enforcement officer of the county, a prosecutor has independent authority to initiate criminal prosecutions.") (citing Mich. Comp. Laws § 764.1) (additional citation omitted). This complete defense can be overcome only if the

person who furnished information to the prosecutor knowingly provided false information, and the prosecutor acted on that false information. *Zavatson*, 714 F. App'x at 525. Here, Plaintiff does not allege that any false information was presented to the prosecutor by the Defendants, or that it was relied upon in bringing charges.

Plaintiff has not adequately pled a claim for malicious prosecution under Michigan law because she has not specifically alleged whether or how Defendants were involved in influencing the decision to prosecute her. Further, under Michigan law the prosecutor's independent discretion in prosecuting a case is a complete defense to a claim for malicious prosecution. Plaintiff has not alleged facts that would permit her to overcome this defense because she does not present facts indicating that any of the Defendants knowingly provided false information to the Lapeer County Prosecuting Attorney's Office, or that the actions of that office were informed by such false information. For these reasons, and others, Plaintiff's claim for malicious prosecution under Michigan law will be dismissed.

## C. First Amendment

Plaintiff's third claim is that Defendants interfered with her First Amendment rights by retaliating against her for engaging in protected speech "when she raised and/or disclosed matters of 'public concern,' including, but not limited to, misuse and/or theft of taxpayers' monies." ECF No. 5 PageID.39. A plaintiff alleging violation of her First Amendment rights under § 1983 must plead factual allegations sufficient to establish that: "(1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct." *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir. 2012) (quoting *Fritz v. Charter Tp. of Comstock*, 592 F.3d 718, 723 (6th Cir. 2010)). Plaintiff's First Amendment claim cannot survive Defendants' motion to dismiss because she has not supported it with the necessary factual allegations.

Under certain circumstances, the First Amendment protects a public employee's right to speak as a citizen on matters of public concern. When a public employee speaks as an employee on matters of personal interest, however, "a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick v. Myers*, 461 U.S. 138, 147 (1983). The Supreme Court, in *Garcetti v. Ceballos*, 547 U.S. 410 (2006), established a three-part test to determine whether a public employee's speech is constitutionally-protected. Plaintiff must show: "(1) that her speech was made as a private citizen, rather than pursuant to her official duties; (2) that her speech involved a matter of public concern; and (3) that her interest as a citizen in speaking on the matter outweighed the state's interest, as an employer, in 'promoting the efficiency of the public services it performs through its employees.'" *Handy-Clay*, 695 F.3d at 540 (quoting *Garcetti*, 547 U.S. at 417–18).

Plaintiff has not made any specific factual allegations that would permit the Court to evaluate her claim under the complex framework of First Amendment jurisprudence. The Amended

Complaint provides only legal conclusions, urging, without elaboration, that Plaintiff "was engaged in protected activity," that her speech about alleged misuse of taxpayer money was a matter of "public concern," and that Defendants retaliated against her in such a way that would "chill an ordinarily firm victim . . . from raising the aforesaid matters of public concern." ECF No. 5 PageID.56–57. Reviewing the required elements, first, Plaintiff does not identify speech she made as a private citizen rather than pursuant to her official duties. Instead, the Amended Complaint describes her speech regarding the alleged misallocation of funds by Defendant Easton as taking place in the course of Plaintiff's official duties. The second element, that the speech pertains to a matter of public concern, would appear to be met—although the allegations are so spare it is not entirely clear whether this is so. Finally, Plaintiff alleges no facts addressing whether her interest as a citizen in speaking on the matter outweighed the state's interest, as an employer, in "promoting the efficiency of the public services it performs through its employees.'" *Garcetti,* 547 U.S. at 417–18. While Plaintiff need not provide overly detailed factual

allegations at this phase, providing mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action" will not suffice to survive a motion to dismiss. *Twombly*, 550 U.S. at 555. Plaintiff's § 1983 claim for violation of her First Amendment rights must be dismissed because she has not provided the Court with any specific facts that would permit the Court to draw the reasonable inference that Defendants are liable for violating her First Amendment rights.

### D. Elliot-Larsen Civil Rights Act Violations

Finally, Plaintiff alleges that Defendants' actions violated Michigan's Elliot-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2202. Section 2 of the ELCRA provides that "[a]n employer shall not . . . [f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status." Mich. Comp. Laws § 37.2202(1)(a). While Defendants do not specifically address

Plaintiff's ELCRA claims in their motion to dismiss, which appears to be an oversight, the Court will *sua sponte* dismiss those claims.

Cases brought under the ELCRA are analyzed under the same burden-shifting framework used in Title VII cases. *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 652 (6th Cir. 2012). Under this framework, a plaintiff first must establish a p*rima facie* case of sex discrimination by showing that she was: (1) a member of a protected group; (2) qualified for the job in question; (3) subject to an adverse employment action; and (4) treated differently than similarly-situated male employees for the same or similar conduct. *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004) (citation omitted). To establish this last element of her *prima facie* case, Plaintiff must show that "all relevant aspects" of her employment situation are "nearly identical" to those of similarly-situated male employees. *Id.* To be considered similarly-situated, the male employee(s) "must have to deal with the same supervisor, have been subject to the same standards, and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of

them for it." *Id.* (quoting *Gray v. Toshiba Am. Consumer Prod., Inc.*, 263 F.3d 595, 599 (6th Cir. 2001) (additional citation omitted)).

Plaintiff has not pled a *prima facie* case of sex discrimination under the Michigan ELCRA because she has not alleged facts that would permit this Court to infer that she was treated differently than *similarly-situated* male employees for the same or similar conduct. Plaintiff provides a conclusory allegation that "Defendant Employer showed favoritism of male employees over female employees, especially when it comes to disciplines and promotions." ECF No. 5 PageID.42. She further avers that she "spoke up and opposed the special treatment she was receiving, which was similar in nature, but dissimilar in outcome to another male employee . . . Gary Easton." *Id.* PageID.43. By this, Plaintiff appears to refer to the fact that she was terminated after an erroneous payroll deduction of $314 was discovered in her account but that Defendant Easton was not terminated when it was allegedly discovered that he had misallocated more than $60,000. Yet Plaintiff has not pled facts establishing that she and Defendant Easton were similarly-situated. The complaint alleges that unlike

Plaintiff, Defendant Easton was a manager at LCMCF and "a supervisor exercising supervisory power over [Plaintiff]." ECF No. 5 PageID.31. Additionally, from the Amended Complaint it appears LCMCF's Board did not infer any wrongdoing from Defendant Easton's receipt of an "approximately $75,000 influx due to accounting papers he had prepared and/or filed," and took no further action. *Id.* PageID.33–34. Additionally, Defendant Easton's "influx" of money is not characterized as an erroneous payroll deduction, while Plaintiff's receipt of an additional $314 is. Because Plaintiff has not pled facts that would could make out a *prima facie* case of gender discrimination under the ELCRA, that claim must be dismissed.

## E. Qualified Immunity

The Court does not decide whether the individual Defendants are entitled to qualified immunity. While "qualified immunity is a threshold question to be resolved at the earliest possible point . . . that point is usually summary judgment and not dismissal under Rule 12." *Wesley v. Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015) (internal quotation marks omitted) (quoting

*Vakilian v. Shaw*, 335 F.3d 509, 516 (6th Cir. 2003)). The Sixth Circuit has further cautioned that "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) (quoting *Wesley*, 779 F.3d at 433).

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Second Corrected Motion to Dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure (ECF No. 9). The facts contained in the Amended Complaint are insufficient to state a claim and demonstrate that any further amendment would be futile. Plaintiff's Complaint is therefore **DISMISSED** with prejudice.

**SO ORDERED.**

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated: March 25, 2019

## Certificate of Service

I hereby certify that this Order was electronically submitted on March 25, 2019, using the CM/ECF system, which will send notification to each party.

s/Amanda Chubb

Case Manager